**Paul Benjamin GOIST, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 08–634C.**

United States Court of Federal Claims.

Feb. 12, 2009.

Paul Benjamin Goist, Coleman, FL, pro se.

Gregg M. Schwind, U.S. Department Of Justice - Commercial Litigation Branch, Washington, DC, for U.S.

## OPINION

### MARGARET M. SWEENEY, Judge.

Before the court in the above-captioned case are defendant's motion for summary dismissal of plaintiff's complaint and defendant's motion to quash plaintiff's subpoena. In his *pro se* complaint,[1] plaintiff, in essence, alleges that United States failed to discharge a debt owed to it by plaintiff.[2] For the reasons set forth below, the court grants defendant's motion for summary dismissal, dismissing plaintiff's complaint for lack of jurisdiction. The court further finds that the complaint filed by plaintiff, a serial litigant, is frivolous pursuant to 28 U.S.C. § 1915A(b)(1), a finding that constitutes plaintiff's third "strike" pursuant to 28 U.S.C. § 1915(g). Finally, the court grants defendant's motion to quash.

## I. BACKGROUND[3]

On November 7, 2001, plaintiff was convicted on two counts of unarmed bank robbery pursuant to 28 U.S.C. § 2113(a) in the United States District Court for the Northern District of Ohio ("Northern District of Ohio").[4] *Goist,* 59 Fed.Appx. at 757–58; 2000 Docket. His sentence included, among other things, a term of imprisonment of 240

1. Plaintiff failed to submit either the required $250 filing fee, *see* 28 U.S.C. § 1926 (2006), or an application to proceed in *forma pauperis, see id.* §§ 1915, 2503(d), with his *pro se* complaint.

2. *Pro se* complaints, " 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

3. The court derives the facts in this section from the complaint ("Compl."); the exhibit attached to defendant's motion to quash ("Quash Ex."); the exhibits attached to plaintiff's opposition to defendant's motions ("Opp'n Ex."); various unreported or unpublished decisions from the federal courts to which plaintiff was a party; and the filings included in following court dockets: *United States v. Goist,* no. 4:00–cr–00489–DCN–1 (N.D.Ohio) ("2000 Docket"); *United States v. Goist,* no. 4:03–cv–01048–DCN (N.D.Ohio) ("2003 Docket"); *United States v. Goist,* no. 1:05–cv–02408–CAB (N.D.Ohio) ("2005 Docket"); *Goist v. Vasquez,* no. 2:05–cv–00074–AAA–JEG (S.D.Ga.) ("First Habeas Docket"); *Goist v. Vasquez,* no. 2:05–cv–00213–AAA–JEG (S.D.Ga.) ("Second Habeas Docket"); and *Goist v. United States,* no. 0:07–cv–02928–HMH (D.S.C.) ("2007 Docket"). The court also takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of a December 10, 1993 article from *The Plain Dealer* of Cleveland, Ohio.

4. Plaintiff robbed the First Federal Bank of Youngstown in Youngstown, Ohio, on November 10, 2000, fleeing with $1,710, and the Farmers National Bank in Damascus, Ohio, on November 17, 2000, fleeing with $1,750. *United States v. Goist,* 59 Fed.Appx. 757, 758 (6th Cir.2003). Plaintiff's fingerprints were found on the note given to the teller in the first bank robbery and he was identified during the second bank robbery by both the bank teller and an investigator for the Ohio Bureau of Workers' Compensation—a former police officer—who happened to be investigating and photographing a home on the same road as the bank. *Id.* at 758–59. Plaintiff also has at least two prior state convictions, both for burglary and robbery. *See Ohio v. Goist,* No.2003–T–0135, 2004 WL 1662241, at *1 (Ohio App. July 23, 2004); *Ohio v. Goist,* No. 95 C.A. 128, 1996 WL 257508, at *1 (Ohio App. May 14, 1996). In December 1993, while serving his sentence for one of his state court convictions, plaintiff sued General Foods Corporation, alleging that the Maxwell House coffee he drank in prison was addictive and that when he stopped drinking the coffee, he suffered from headaches and insomnia. *Inmates Sue, Claim Coffee Addictive,* The Plain Dealer (Cleve.), Dec. 10, 1993, at 1B.

months in federal custody.[5] 2000 Docket. Plaintiff appealed his conviction to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit"), which affirmed the judgment of the Northern District of Ohio. *Goist,* 59 Fed.Appx. at 758, 763. Shortly thereafter, on May 29, 2003, plaintiff filed a motion in the Northern District of Ohio pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, which the Northern District of Ohio treated as a separate case. *See* 2000 Docket; 2003 Docket. The Northern District of Ohio denied plaintiff's motion on December 30, 2003, and certified, pursuant to 28 U.S.C. § 1915(a)(3), "that an appeal from this decision would be frivolous and could not be taken in good faith and there is no basis upon which to issue a certificate of appealability." 2003 Docket. Plaintiff unsuccessfully appealed the Northern District of Ohio's refusal to issue a certificate of appealability to the Sixth Circuit. *Id.* Dissatisfied with the Sixth Circuit's ruling, plaintiff then sought relief from the United States Supreme Court ("Supreme Court"), which denied his petition for writ of certiorari on June 13, 2005. *Goist v. United States,* 545 U.S. 1122, 125 S.Ct. 2926, 162 L.Ed.2d 309 (2005) (mem.). Plaintiff remains incarcerated at the Federal Correctional Complex in Coleman, Florida. Compl. ¶ 2.

On August 15, 2005, plaintiff filed, in his original federal criminal case, a Motion for Return and Release of Property Pursuant to Federal Rules of Criminal Procedure, Rule 41(g) and Request for Remedy Under Federal Rules of Civil Procedure Rule 8(c).[6] 2000 Docket. In that motion, plaintiff stated that he was acting as the "Authorized Representative," "Attorney–in–Fact," and "Third Party Intervenor" for "PAUL BENJAMIN GOIST(c)1984,"[7] and requested, as the "holder-in-due-course" for "Case/Account number(s) # 4:00–cr–00489 KMO ALL,"[8] that the court use his "Exemption Number" to "clos[e]" and "settle[ ]" his case. *Id.* Plaintiff then described the property to be returned to him as three bonds, which he identified as "GSA SF 273, GSA SF 274 and GSA SF 275."[9] *Id.* Plaintiff served a copy of this motion on Gary D. Arbeznik, an Assistant United States Attorney ("AUSA") involved with his case. *Id.* The Northern District of Ohio denied plaintiff's motion on August 24, 2005, without a written order. *Id.*

Subsequently, on October 19, 2005, undeterred by the Supreme Court's denial of his petition for writ of certiorari four months earlier, plaintiff filed five documents in his 28 U.S.C. § 2255 case. 2003 Docket. These documents included: (1) Notice of Acceptance, Standing and Status: Request for Remedy; (2) Acceptance for Value; (3) Notice of Acceptance for Value and Exemption From Levy; (4) Request Waiver of Fees, Fine and Cost / Notice of Waiver of Protest; and (5) Bond.[10] *Id.* In the first of these documents,

---

**5.** Plaintiff had sought a sentence of death by lethal injection. 2000 Docket.

**6.** Rule 41(g) of the Federal Rules of Criminal Procedure provides:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Rule 8(c) of the Federal Rules of Civil Procedure identifies the affirmative defenses available in civil cases.

**7.** It is clear to the court that plaintiff uses "(c)" and "(C)" to signify the copyright symbol "©" throughout his court filings.

**8.** Plaintiff also identified the case by a "CUSPIS" account number and an "AUTOTRIS" account number. Both account numbers appear to be plaintiff's social security number.

**9.** Plaintiff was undoubtedly referring to Standard Form 273, "Reinsurance Agreement for a Miller Act Performance Bond," Standard Form 274, "Reinsurance Agreement for a Miller Act Payment Bond," and Standard Form 275, "Reinsurance Agreement in Favor of the United States." *See* 48 C.F.R. § 53.228 (2005).

**10.** This was not the first time that plaintiff had submitted these documents to a federal district court for filing. On March 29, 2005, while incarcerated at the Federal Correctional Institution in Jesup, Georgia, plaintiff filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Georgia ("Southern District of Georgia") alleging that the prosecutor used evidence improperly against

plaintiff indicated that, as the "Authorized Representative," he was "operat[ing] ... as a living principle [sic], sentient, sp[i]ritually autonomous being under unlimited commercial liability and with full standing in law, for and on behalf of PAUL BENJAMIN GOIST(C)1984, the DEBTOR in this matter." [11] *Id.* He further indicated that he had "Accepted for Value" all of the complaints, warrants, detainers, charging documents, and judgments connected to the case, and was returning said documents to AUSA Arbeznik in an effort "to expedite the process of reaching settlement and closure" in his case. *Id.* Moreover, plaintiff referred to the concurrently filed bond in the following manner:

> A Court BOND executed by the Authorized Representative, as CREDITOR in this matter, is filed concurrently herewith for the purposes of BONDING re CASE and dischargin[g] ALL obligations re CASE on the "substance side," through use of the Authorized Representative Priority Exemption Number by the Respondents to COMMAND the MEMORY of Employer Identification Number ... and charge the same to the DEBTORS ORDER or to your ORDER.

*Id.* As a remedy, plaintiff requested that he "be provided with NOTICE OF DISCHARGE of the Obligation in full, a statement of zero (0) balance on the account, closing of the account on the matter and closing of the account re case within ten (10) days of the filing of this notice." *Id.*

him, resulting in his conviction for unarmed bank robbery. First Habeas Docket. Although plaintiff's petition was dismissed on September 29, 2005, he filed, on October 14, 2005, documents with the same titles as the documents he filed in his 28 U.S.C. § 2255 case five days later. *Id.* The two sets of documents were, with the exception of certain details applicable to the respective cases, substantively identical. *Id.* Further, the documents that plaintiff filed in the Southern District of Georgia make no reference to any cases from the Northern District of Ohio or the personnel involved in those cases. *Id.*

11. Although plaintiff identified "PAUL BENJAMIN GOIST(C)1984" as the debtor, he signed the document, in his purported capacity of "Authorized Representative," as the "Secured Party/Creditor." 2003 Docket.

In the second of the five documents plaintiff filed on October 19, 2005, Acceptance for Value, plaintiff provided:

> Please take notice that the DEBTOR and SECURED PARTY have entered into a Priority Security Agreement dated June 13, 2005, the Department of Licensing and [P]rofessions Division, Spokane County[,] Washington and file ... # 2005–130–7654–1 and 1099654 May 09, 2005 and as also reflected in LONG COUNTY, STATE OF GEORGIA, File ... # 091–2005–102, August 08, 2005.[12] ...
>
> This Notification is being given in accordance with the provisions of Section § 9–305 of the UNIFORM COMMERCIAL CODE.... [13]

*Id.* (footnotes added). Plaintiff served a copy of this document on AUSA Arbeznik. *Id.* Next, in the fourth document filed by plaintiff, he requested a waiver of all fees, fines, and costs assessed against "PAUL BENJAMIN GOIST(C) 1984" within seventy-two hours, and if the court did not comply, the court's noncompliance would constitute (1) "dishonor"; (2) "waiver of protest and stipulation of acquiescence and estoppel by silence that grants tac[ ]it authority for Authorized Representative to sign by accom[m]odation for Administrative/Judicial Remedy for any and all sums certain involved in securing remedy and recompense in this matter from the dishonoring party"; and (3) "tac[ ]it Authorization for issuance of NOTARIAL CERTIFICATION of NON–RESPONSE, i.e., Judgment in Estoppel and consent by the

12. Copies of these documents have not been provided to the court. However, plaintiff has submitted, as an exhibit to his opposition to defendant's motions, a copy of a UCC Financing Statement on file with the Washington State Department of Licensing, file number 2005–193–4083–7, dated July 5, 2005. *See* Opp'n Ex. B. On the UCC Financing Statement, plaintiff identified "PAUL BENJAMIN GOIST," an "En Legis–LLC," as the debtor and "Paul Benjamin Goist" as the secured party. *Id.* at 1, 3. Plaintiff also indicated that an acknowledgment of the filing of the UCC Financing Statement should be sent to AUSA Arbeznik.

13. Section 9–305 of the Uniform Commercial Code is titled "Law Governing Perfection and Priority of Security Interests in Investment Property."

dishonoring party to be placed into involuntary bankruptcy." *Id.* The Northern District of Ohio struck all five documents from the docket on November 18, 2005. *Id.*

At about the same time that plaintiff was filing the five aforementioned documents in his 28 U.S.C. § 2255 case, the United States filed a civil suit in the Northern District of Ohio seeking declaratory and injunctive relief, as well as the imposition of a civil fine of at least $5,500, against plaintiff. 2005 Docket. Specifically, in an October 13, 2005 complaint, the United States sought to (1) invalidate several improper liens established by UCC Financing Statements that plaintiff filed with the Washington Secretary of State against the judge in plaintiff's federal criminal case and AUSA Arbeznik, several false and fraudulent Internal Revenue Service ("IRS") Form 8300s that plaintiff filed with the IRS concerning the judge, AUSA Arbeznik, and another AUSA, and false and fraudulent involuntary bankruptcy petitions that plaintiff filed or intended to file in United States Bankruptcy Court against AUSA Arbeznik and another AUSA;[14] (2) prevent plaintiff from filing such improper liens, false and fraudulent IRS forms, and fraudulent involuntary bankruptcy petitions in the future against the aggrieved individuals or any other federal employee; and (3) prohibit plaintiff from taking any other retaliatory or harassing actions against the aggrieved individuals or any other federal employee. *Id.* The United States attached the UCC Financing Statements, IRS Form 8300s, and involuntary bankruptcy petitions to its complaint. In each of the UCC Financing Statements, plaintiff described the subject collateral as $160,000,000. *Id.* Similarly, plaintiff claimed in the IRS Form 8300s that the aggrieved parties paid $160,000,000.[15] *Id.* And, in an involuntary bankruptcy petition, plaintiff indicated that he had a secured claim of $160,000,000. *Id.*

During the pendency of the civil suit brought by the United States, plaintiff filed,

among many other documents, several documents similar in nature to those he filed in his 28 U.S.C. § 2255 case, including: (1) Bond; (2) Notice of Conditional Acceptance for Value; and (3) Request Waiver of Fees, Fine and Cost/Notice of Waiver of Protest. *Id.* Plaintiff filed these three particular documents on October 31, 2005, and the Northern District of Ohio struck these documents from the docket on December 22, 2006. *Id.* Subsequently, in an October 2, 2007 Opinion and Order, the Northern District of Ohio granted the United States' motion for default judgment, providing the relief requested by the United States in its complaint and indicating that "[t]his judgment shall constitute a 'strike' against [Mr. Goist] pursuant to the 'three strikes rule' of 28 U.S.C. § 1915(g)". *United States v. Goist*, No. 1:05CV02408, 2007 WL 2902875, at *1 (N.D.Ohio Oct.2, 2007), *appeals docketed*, Nos. 07–3396, 07–4330 (6th Cir. Apr. 4, 2007, Nov. 6, 2007).

While plaintiff was busy filing similar sets of documents in cases pending before the Northern District of Ohio and the Southern District of Georgia during the month of October 2005, he initiated a second action in the Southern District of Georgia. On October 20, 2005, plaintiff filed a new petition for writ of habeas corpus in the Southern District of Georgia, which, unlike his prior habeas corpus petition, contained allegations that centered on the various contentions contained in the documents that he was filing in his other pending cases during the same month. *See* Second Habeas Docket. Ultimately, on May 12, 2006, the Southern District of Georgia adopted the magistrate judge's report and recommendation to dismiss plaintiff's petition. *Id.*

On August 24, 2007, shortly before the Northern District of Ohio ruled on the United States' civil complaint against plaintiff, plaintiff filed a complaint against the United States in the United States District Court for the District of South Carolina ("District of South Carolina"). 2007 Docket. In his com-

---

**14.** IRS Form 8300 is titled "Report of Cash Payments Over $10,000 Received in a Trade or Business."

**15.** Curiously, plaintiff indicated on the IRS Form 8300s that the judge, AUSA Arbeznik, another

AUSA, and his defense attorney paid $160,000,000 to either the "Assistant United States Attorney" or the "United States District Court Judge." 2005 Docket.

plaint, plaintiff alleged that he "deposited BONDS" with the United States and that the United States "deposited Plaintiff's three Subrogation/Diversity Surety Bonds in equivalent value of Four Hundred and Eighty Million Dollars" into the United States Treasury in exchange for "discharg[ing] Plaintiff's liability...."[16] *Id.* Plaintiff contended that the United States failed to "discharge Plaintiff's liability" and instead used the $480,000,000 for its own purposes. *Id.* He further averred that he made numerous unsuccessful prior attempts to obtain relief from the Administrative Office of the United States Courts, then-Secretary of State Condoleezza Rice, then-Secretary of the Treasury Henry Paulson Jr., the Comptroller of the Currency, the United States Secret Service, the United States Army, and the United States Department of Justice. *Id.* Then, after reciting his prior attempts to obtain relief, plaintiff claimed six causes of action: (1) unjust enrichment of defendant by plaintiff's bonds; (2) unjust enrichment of defendant by the conversion of plaintiff's bonds; (3) an accounting; (4) adjustment of accounts pursuant to 28 U.S.C. § 1494; (5) personal replevin; and (6) breach of implied contract. *Id.*

On September 18, 2007, the assigned magistrate judge from the District of South Carolina issued his report and recommendations, which were adverse to plaintiff. *Id.* Plaintiff responded to the report and recommendations on September 25, 2007. *Id.* Among the exhibits attached to plaintiff's response were the following, all of which referenced his initial criminal case in the Northern District of Ohio: (1) Bond; (2) several Surety Bonds; (3) his July 5, 2005 UCC Financing Statement; (4) Acceptance for Value; (5) Dishonor Settlement; and (6) Bill of Exchange. *Id.* In an October 10, 2007 Opinion and Order, the District of South Carolina adopted the magistrate judge's report and recommenda-

tion to dismiss plaintiff's petition for lack of jurisdiction. *Goist v. United States*, No. 0:07–2928–HMH–BM, 2007 WL 3003178, at *1 (D.S.C. Oct.10, 2007), *appeal dismissed*, No. 07–7659, slip. op. at 1 (4th Cir. Dec. 17, 2007). In dismissing plaintiff's case, the District of South Carolina found the case to be frivolous and "ordered that this case is deemed a 'strike' for purposes of the three strikes rule of 28 U.S.C. § 1915(g)." *Id.* at *1–2.

Plaintiff filed the instant *pro se* complaint on September 5, 2008, which contains allegations that are similar those in the complaint he filed in the District of South Carolina. In particular, plaintiff contends that he gave AUSA Arbeznik, who he referred to as the "Solicitor to the Treasury," a "Partial Release, Partial Assignment in the amount of $160,000,000.00 to discharge debt owed in favor of the United States of America pursuant to the Federal Assignment[ ]s Act Title 31 United States code, Section [ ] 3713(a)," but that the United States "did not discharge the debt owed by the Plaintiff/Claimant and is now liable under Title 31 U.S.C. § 3713(b)."[17] Compl. ¶¶ 4–5. This purported "Partial Release, Partial Assignment" was the July 5, 2005 UCC Financing Statement on file with the Washington State Department of Licensing mentioned above. *See* Opp'n Ex. B.

Plaintiff then contends that he "filed three (3) subrogation bonds with" the Northern District of Ohio,[18] each in the amount of $160,000,000; that the United States accepted the bonds and deposited them in the United States Treasury; that by accepting the bonds, the United States "entered into an implied contract" with him; and that the United States "became unjustly enriched by the deposit of the bonds without [renumeration]" to plaintiff. Compl. ¶¶ 7–9, 11. Each

16. From the context, it appears that a "discharge" of plaintiff's "liability" would be both his release from prison and a payment to him in an amount ranging from $42,000,000 to $480,000,000. 2007 Docket.

17. Section 3713 is not titled the "Federal Assignments Act." Instead, it is titled "Priority of Government claims."

18. Plaintiff submitted a copy of his certified mail receipt and the return receipt he received after the Northern District of Ohio received the "subrogation bonds." Opp'n Ex. A. The return receipt bears the following stamp: "Symbol 00004660–8; Credit to The U.S. Treasury; Jun 20 2005; Clerk, U.S.D.C.; Cleveland, Ohio." *Id.*

of the "subrogation bonds" contained the following statement:

> I, _____, do hereby enter myself security for all costs in the cause, and acknowledge myself bound to pay or cause to be paid all costs which may accrue in this ac[ ]tion, either to the opposite party, or to any of the officers of this Court, pursuant to the laws of this state, United States and/or the District of Columbia[ ], see: *State v. Sefrit*, 82 Wash. 520, 144 P. 725; *State v. Yelle*, 4 Wash.2d 520, 103 P.2d 372 (1940); *Nelson v. Bartell*, 103 P.2d 567[, 103 P.2d 30]..
>
> Dated this *13th* day of *June* 2005[ ]A.D.

Opp'n Ex. C; Opp'n Ex. D at 1; Opp'n Ex. E. On each of the three "subrogation bonds," the names of AUSA Arbeznik, another AUSA, and plaintiff's defense attorney were typewritten on the blank line, which was presumably inserted by plaintiff, as none of the three individuals signed or otherwise endorsed the statement. The "subrogation bonds" also contained the following statement:

> Personally appeared before me this day, Secured Party Creditor, *Paul Benjamin; Goist (c)84*, by and through Power of Attorney, in care of[ ]: _____[,] surety of the BONDS of _____[,] State of *OHIO*, City of *YOUNGSTOWN/CLEVE-LAND[,]* who being duly sworn deposes and says that he/she is seized of his/her right mind, and that over and above all of his/her just Debts and Liabilities, in the property not exempt by law from levy and sale under execution of a clear, unencumbered e[ ]state of value in excess of *$160 000 000 00* United States dollars within the jurisdiction of this State.

Opp'n Ex. C; Opp'n Ex. D at 1; Opp'n Ex. E. On each of the three "subrogation bonds," the names of AUSA Arbeznik, another AUSA, and plaintiff's defense attorney were typewritten on the second blank line,[19] which again was presumably inserted by plaintiff. Plaintiff's signature appears underneath this second statement, and a person "authorized

... to administer oaths" has signed, stamped, and dated the "subrogation bonds." Opp'n Ex. C; Opp'n Ex. D at 1; Opp'n Ex. E.

■ After his statement of the case, plaintiff enumerates four causes of action. In his first cause of action, titled "The Defendants/Respondents have become unjustly enriched by acceptance of the bonds without [renumeration] to the claimant," plaintiff contends that the United States has been unjustly enriched in the amount of $480,000,000. Compl. ¶¶ 13–16. In his second cause of action, titled "The Defendants have converted the use of the bonds to benefit the defendant/respondents thereby becoming unjustly enriched thereby demanding an accounting be conducted," plaintiff reiterates his claim of unjust enrichment and demands an "accounting and adjustment of the accounts" pursuant to 28 U.S.C. § 1494. *Id.* ¶¶ 17–19. In his third cause of action, titled "That an order for personal replevin be issued for the return of the property(ies)/credit created on return since June 20, 2005," plaintiff seeks the return of "any credit, assets, funds, [and] money on account created from the deposit of the bonds ... on June 20, 2005." *Id.* ¶¶ 20–21. Finally, in his fourth cause of action, titled "That a breach of implied contract occur[r]ed by the Defendant's/Respondent's failure to adjust the account after partial performance of acceptance of bonds," plaintiff contends that the United States breached an implied contract when it failed to "adjust the accounts and discharge the debt...." *Id.* ¶¶ 22–23. In his prayer for relief, plaintiff requests that the court enter judgment against the United States for breach of implied contract, unjust enrichment, and conversion; that the court direct an accounting be conducted and a receiver appointed; that the court issue orders of personal replevin and specific performance; that the court find "the Solicitor" to be personally liable for "his violation" of 31 U.S.C. § 3713(b); and that the court award interest, costs, and fees to plaintiff. *Id.* ¶¶ a–k, m. Plaintiff demands a jury trial.[20] *Id.* ¶ l.

---

19. The first blank line was not filled in. Opp'n Ex. C; Opp'n Ex. D at 1; Opp'n Ex. E.

20. The court is without authority to grant plaintiff's request for a jury trial. "It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the

On October 30, 2008, defendant moved to summarily dismiss plaintiff's complaint and requested that the court assess a third "strike" against plaintiff pursuant to 28 U.S.C. § 1915(g).[21] Def.'s Mot. Summ. Dismissal *Pro Se* Compl. 1. Then, on November 6, 2008, defendant filed a motion to quash a subpoena that plaintiff purported to serve on defense counsel on October 10, 2008.[22] Def.'s Objection & Mot. Quash ("Mot.Quash") 1. Plaintiff responded in opposition to defendant's motions on November 10, 2008. Opp'n 1–6. No additional briefing or argument is necessary.

## II. DISCUSSION

### A. Motion to Dismiss

Defendant moves for summary dismissal of plaintiff's complaint pursuant to RCFC 12. In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). With respect to RCFC 12(b)(1), plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d

746, 748 (Fed.Cir.1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds*, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

If the court finds that it possesses jurisdiction to entertain one or all of plaintiff's claims, it still must dismiss those claims that fail to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). The Supreme Court recently clarified the degree of specificity with which a plaintiff must plead facts sufficient to survive such a motion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1964–65 (citation omitted). The Supreme Court explained that although a complaint need not contain "detailed factual allegations," *id.* at 1964, the "factual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

---

Federal Government." *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

21. Plaintiff contends that defendant's motion to dismiss "circumvent[s] the rules of this court" because defendant did not file an answer. Mot. Opp'n Def.'s Mot. Summ. Dismissal *Pro Se* Compl. & Mot. Strike Non Responsive ("Opp'n") 3. Plaintiff is mistaken. Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC") provides, in part:

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. *But a party may assert the following defenses by motion:*
(1) lack of subject-matter jurisdiction;
....
(6) failure to state a claim upon which relief can be granted; ...
....
*A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.*

RCFC 12(b) (emphasis added). Thus, defendant properly filed its motion to dismiss in lieu of an answer (*i.e.*, responsive pleading). Moreover, defendant is not required to file an answer (*i.e.*, responsive pleading) until the court rules on its motion to dismiss. *See* RCFC 12(a)(4).

22. Defendant attached a copy of the subpoena to its motion. In the subpoena, plaintiff sought the production of documents related to grand jury proceedings in his federal criminal case; a variety of other documents related to his federal criminal case; "any and all verified statement of accounts under [his criminal case] and CREDIT SYMBOL # 00004660–8 credited to the United States Treasury [on] June 20, 2005"; "any and all 'financial statement(s)' under Credit ... # 00004660–8, Internal Revenue Service 1099 original issue discounts, fiduciary tax statements, [and] fiduciary tax returns from credit symbol ... # 00004660–8" and his criminal case; "all bid bonds, performance bonds, [and] payment bonds GS[A] 273, 274 and 275"; and "any and all Publi[c] Debt Forms ... 1522" filed in his criminal case. Quash Ex. 7–9.

allegations in the complaint." [23] *Id.* at 1969. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### B. Subject Matter Jurisdiction

▉▉▉ Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court sua *sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

▉▉▉ The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

▉▉▉ The Tucker Act, the principal statute governing the jurisdiction of this court, provides, in part, that the Court of Federal Claims has jurisdiction over claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States, and that do not sound in tort. 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for mon-

ey damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir. 1994) (en banc).

Here, plaintiff alleges jurisdiction under a number of different sources of law. As a preliminary matter, the court notes that all of plaintiff's claims are specious and that plaintiff's conduct reflects a clear pattern of frivolous and vexatious litigation. To demonstrate the gross deficiency of plaintiff's complaint, the court will address each source of jurisdiction alleged by plaintiff, in turn. However, before the court addresses these alleged sources of jurisdiction, the court examines another part of the Tucker Act cited by plaintiff—28 U.S.C. § 1494.

### C. The Court Lacks Jurisdiction Over Plaintiff's Demand for an Accounting Pursuant to 28 U.S.C. § 1494 and the Act of March 3, 1863

▉▉▉ Plaintiff first asserts that he is entitled to "an accounting to be done upon accounts by the payment of monies, bonds, [and] commercial instruments paid by Claimant to the Defendant(s)" pursuant to 28 U.S.C. § 1494 and the Act of March 3, 1863, ch. 92, 12 Stat. 765. Compl. ¶ 1; *accord id.* ¶ 19. Section 1494 provides:

The United States Court of Federal Claims shall have jurisdiction to determine the amount, if any, due to or from the United States *by reason of any unsettled account of any officer or agent of, or contractor with, the United States,* or a guarantor, surety or personal representative of any such officer, agent or contractor, and to render judgment thereof, 1 where—

(1) claimant or the person he represents has applied to the proper department of the Government for settlement of the account;

---

**23.** In so holding, the Supreme Court determined that the "no set of facts" language set forth in

*Conley,* 355 U.S. at 45, 78 S.Ct. 99, "has earned its retirement," *Bell Atl. Corp.,* 127 S.Ct. at 1969.

(2) three years have elapsed from the date of such application without settlement; and

(3) no suit upon the same has been brought by the United States.

*1* So in original. Probably should be "thereon".

28 U.S.C. § 1494 (emphasis added) ("1" and accompanying text in original). Section 1494 provides this court with jurisdiction over claims concerning the unsettled accounts of officers of the United States, agents of the United States, and contractors with the United States. However, the statute and binding precedent make clear that, in order to have standing to assert such a claim, plaintiff himself must be the officer, agent, or contractor. *See Standard Dredging Co. v. United States,* 71 Ct.Cl. 218, 239 (1930) ("The plain language of the section grants to an officer, agent, or a contractor, or the guarantor, surety, or personal representative of such officer, agent, or contractor the right to come into this court and have the claim of the United States that he is indebted to it determined . . . ." (discussing a statute substantially similar to section 1494)). Indeed, the Court of Federal Claims has reaffirmed this requirement. *See Watson v. United States,* No. 06–716C, 2007 WL 5171595, at *5 (Fed.Cl. Jan.26, 2007) (unpublished decision), *aff'd,* 240 Fed.Appx. 410 (Fed.Cir.2007) (unpublished table decision). Because plaintiff has not alleged that he is an "officer or agent of, or contractor with, the United States," section 1494 does not provide this court with jurisdiction in this case. *Accord Watson,* 2007 WL 5171595, at *6. Moreover, the Act of March 3, 1863, has been superseded by subsequently enacted statutes, including the Tucker Act. *See* Tucker Act, ch. 359, 24 Stat. 505 (1887). Accordingly, the Act of March 3, 1863, cannot provide the basis for a claim in the Court of Federal Claims.

### D. The Court Lacks Jurisdiction Over Plaintiff's Claim for a "Set-off" Pursuant to 31 U.S.C. § 3713

 Plaintiff next asserts that he is entitled to a "set-off" pursuant to 31 U.S.C. § 3713(b) because "the United States did not pay and discharge the debt when given . . . ."

Compl. ¶ 1. Section 3713, titled "Priority of Government claims," provides:

(a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed; or

(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(2) This subsection does not apply to a case under title 11.

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713. By its plain language, section 3713 describes the circumstances under which an insolvent debtor must pay a claim of the United States prior to the claims of other creditors. *See United States v. Moore,* 423 U.S. 77, 80, 96 S.Ct. 310, 46 L.Ed.2d 219 (1975) (stating, with respect to 31 U.S.C. § 191 (1976), which was later renumbered to 31 U.S.C. § 3713(a), that "[t]he statute at issue is almost as old as the Constitution, and its roots reach back even further into the English common law; the Crown exercised a sovereign prerogative to require that debts owed it be paid before the debts owed other creditors."). Furthermore, section 3713(b) concerns the repercussions flowing from the failure of an insolvent debtor's representative or estate to pay the claim of the United States before the claims of other creditors, and not any right to setoff. Thus, it is clear that section 3713 does not provide debtors with a private right of action

against the United States.[24] Accordingly, section 3713 cannot provide the basis for a claim in the Court of Federal Claims. Moreover, to the extent that plaintiff alleges that AUSA Arbeznik is personally liable for the purported violation of section 3713(b),[25] see id. ¶ e, this court lacks jurisdiction, see Imbler v. Pachtman, 424 U.S. 409, 422–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (recognizing common law immunity for public prosecutors); Sherwood, 312 U.S. at 588, 61 S.Ct. 767 (noting that the jurisdiction of the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, ... and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court").

## E. The Court Lacks Jurisdiction Over Plaintiff's Claims for Conversion, Quasi-specific Performance, and Unjust Enrichment

 Plaintiff alleges next that this court has "pend[e]nt jurisdiction" over his claims for "conversion, quasi specific performance, and unjust-enrichment." Id. ¶ 1. "Pendent jurisdiction" is the jurisdiction of a court "to hear and determine a claim over which it would not otherwise have jurisdiction, because the claim arises from the same transaction or occurrence as another claim that is properly before the court." Black's Law Dictionary 870 (8th ed.1999). The Court of Federal Claims "possesses ancillary and pendent jurisdiction that allows it to adjudicate issues that are incidental to the court's general jurisdictional authority to render money judgments." Am. Renovation & Constr. Co. v. United States, 65 Fed.Cl. 254, 260 (2005). See generally Trek Leasing, Inc. v. United States, 62 Fed.Cl. 673, 677–79 (2004) (describing the history and application of pendent jurisdiction in federal courts, including the Court of Federal Claims). However, the court's "ancillary and pendent jurisdiction ... does not extend to powers specifically excluded from the Court's jurisdiction...." Am. Renovation & Constr. Co., 65 Fed.Cl. at 260.

 The Court of Federal Claims does not have jurisdiction over claims sounding in tort or, except in limited situations not relevant in this case, see 28 U.S.C. § 1491(a)(2), (b)(2), claims for nonmonetary equitable relief. See Kanemoto v. Reno, 41 F.3d 641, 644–45 (Fed.Cir.1994) (citing 28 U.S.C. § 1491(a)). Plaintiff's claim for conversion sounds in tort. Block v. United States, 66 Fed.Cl. 68, 72 (2005) (citing Walter E. Heller & Co. SE., Inc. v. United States, 231 Ct.Cl. 713 (1982)). And, plaintiff's claims for unjust enrichment and specific performance are equitable in nature. Aetna Cas. & Sur. Co. v. United States, 228 Ct.Cl. 146, 655 F.2d 1047, 1059 (1981) (unjust enrichment); Quinault Allottee Ass'n v. United States, 197 Ct.Cl. 134, 453 F.2d 1272, 1274 n. 1 (1972) (specific performance). Accordingly, the court does not have jurisdiction over these claims.

## F. The Court Lacks Jurisdiction Over Plaintiff's Claims for Illegal Confinement and Personal Replevin

 Plaintiff then avers, without further elaboration, that he has "possible illegal confinement allegations...." Compl. ¶ 2. The court treats plaintiff's "possible illegal confinement allegations" as a claim of unjust conviction. The Court of Federal Claims has jurisdiction to award damages for unjust conviction pursuant to 28 U.S.C. § 1495, but only if the conviction has already been set aside by another court. See 28 U.S.C. § 2513(a)(1) ("Any person suing under section 1495 of this title must allege and prove that ... [h]is conviction has been reversed or

---

24. Even if section 3713 provided debtors with a private right of action against the United States, plaintiff has not alleged that he is presently indebted to the government; rather, he alleges that the government owes him money. See, e.g., Compl. ¶ 11 ("[T]he United States of America became unjustly enriched ... in the amount of ten (10) percent per annum of Fo[ ]rty Two Million Dollars ($42,000,000.00)....").

25. It is abundantly clear that AUSA Arbeznik neither violated the statute as plaintiff alleges nor is liable to plaintiff under any theory. To the contrary, this plaintiff has engaged in a campaign of harassment against various attorneys and judges and in so doing, has clearly abused the legal process.

set aside...."). Because plaintiff's conviction has not been set aside, *see* First Habeas Docket, Second Habeas Docket, section 1495 does not provide this court with jurisdiction in this case. *Accord Lott v. United States*, 11 Cl.Ct. 852, 852–53 (1987).

■ In addition to his illegal confinement allegation, plaintiff asserts a cause of action for personal replevin, stating that he is entitled to the replevin of "any credit, assets, funds, [or] money on account created from the deposit" of the "subrogation bonds." Compl. ¶ 20. Plaintiff's allegations are unclear as to the type of action he is truly asserting. On the one hand, plaintiff labels his cause of action as one for personal replevin, which is a common law action "to replevy a person out of prison or out of another's custody, which has been largely superseded by the writ of habeas corpus as a means of investigating the legality of an imprisonment." *Black's Law Dictionary, supra*, at 1326. As stated above, to the extent that plaintiff seeks his release from prison, the court lacks jurisdiction over his claim.

■ To the extent that plaintiff's allegations can be construed as a general claim for replevin, which is a common law action "for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it," *id.* at 1325, they are not well-founded. Money is not subject to replevin. *See* 66 Am.Jur.2d *Replevin* § 9 (2008) ("Money is not subject to replevin unless it is marked or designated in some manner so as to become specific, as it regards the power of identification, such as being in a bag or package."). Thus, to the extent that plaintiff seeks repossession of money in his claim for personal replevin, the court lacks jurisdiction over his claim.

### G. The Court Lacks Jurisdiction Over Plaintiff's Claim for Breach of Implied Contract

■ Finally, the most charitable interpretation of the allegations in plaintiff's complaint is that they constitute a claim for breach of implied contract. *See* Compl. ¶¶ 1, 22, V.1–.7. The Court of Federal Claims has jurisdiction over claims for the breach of an implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1). However, the court's "jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules Inc. v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). The Supreme Court has explained the distinction:

> An agreement implied in fact is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." By contrast, an agreement implied in law is a "fiction of law" where "a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress."

*Id.* at 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (citations omitted). To the extent that plaintiff's complaint can be construed to allege an implied-in-law contract, the court is required to dismiss those claims for lack of jurisdiction.

■ Moreover, although plaintiff is required to assert only a "well-pleaded allegation" of an implied-in-fact contract "to overcome challenges to jurisdiction," *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997), plaintiff has failed to do so here, even in light of the less stringent standards applicable to *pro se* complaints, *Hughes*, 449 U.S. at 5, 101 S.Ct. 173. As an initial matter, plaintiff's use of the phrase "implied contract" as a talisman-like device, standing alone, fails to constitute a well-pleaded allegation. Mere labels are insufficient to establish jurisdiction. Just as importantly, plaintiff's contractual theory is utterly fanciful. Plaintiff self-servingly contends that the implied contract was "definite in it[ ]s terms and conditions"; that the contract was "reasonable"; that he "performed his side of the bargain"; that the United States "failed to perform"; and that the contract "was supported by adequate consideration." Compl. ¶¶ V.1–.5. These vague allegations are insufficient to demonstrate the existence of a contract with the United States. In-

deed, not only is the nature of the contract absurd on its face, but, unsurprisingly, there is not even the slightest indication of a "meeting of the minds" between plaintiff and the United States. To the contrary, plaintiff's allegations merely reflect a sophomoric attempt by plaintiff to ensnare the United States in an exchange of nonsensical filings and unnecessary responses.

 In addition, plaintiff's specific allegations relative to two of the critical elements of a contract—offer and acceptance—are firmly rooted in the realm of nonsensical. Plaintiff appears to allege, on the one hand, that his offer to the United States is evidenced by the "Partial Release, Partial Assignment"—a facially meaningless instrument—that he sent to AUSA Arbeznik, *id.* ¶ 4, and that AUSA Arbeznik's receipt of the so-called "voluntary assignment" constituted acceptance by the United States, Opp'n 2–3; Opp'n Ex. B. As described above, the purported "voluntary assignment" is, in fact, the UCC Financing Statement that plaintiff filed with the Washington State Department of Licensing. *See* Opp'n Ex. B. The Northern District of Ohio has declared the UCC Financing Statement to be "null, void, and of no legal effect." *Goist*, 2007 WL 2902875, at * 1. This court has no reason to disturb that judgment and, in any event, plaintiff, under principles of res judicata, is collaterally estopped from resuscitating this claim.[26] Thus, this purported "voluntary assignment" cannot be the subject of an offer or acceptance.

Plaintiff also appears to allege, on the other hand, that his putative offer was evidenced by the "three (3) subrogation bonds" that he mailed to the Northern District of Ohio, which the United States purportedly accepted by operation of a clerical act, i.e., the supposed filing of those bonds with the Northern District of Ohio, and the alleged

deposit of those bonds with the United States Department of Treasury. Compl. ¶¶ 7–8; Opp'n 4. The "subrogation bonds" are absurd on their face—clearly, no funds belonging to plaintiff were deposited into the United States Treasury—and bear no indication that the United States did anything with them but throw them into the trash. Contrary to plaintiff's assertion, Opp'n 4, the Northern District of Ohio's receipt of the "subrogation bonds" is not sufficient to demonstrate the United States' acceptance of any alleged offer. Thus, there is no offer or acceptance with respect to the "subrogation bonds."

It is beyond dispute that the United States took no affirmative action to demonstrate any intent to contract with plaintiff. Rather, the allegations and supporting documentation advanced by plaintiff describe a scheme hatched by plaintiff, the sole purpose of which was to harass the United States. Indeed, the allegations in plaintiff's complaint merely demonstrate the use of chicanery to disrupt the court system. Thus, altogether, plaintiff's allegation of an implied-in-fact contract is a farce, which the court refuses to dignify. In his complaint, plaintiff offers nothing more than the details of his shenanigans, which are no substitute for a well-pleaded allegation. Thus, because plaintiff fails to set forth a well-pleaded allegation of an implied-in-fact contract, the court lacks jurisdiction.

### H. Plaintiff's Complaint Is Frivolous Under 28 U.S.C. § 1915A

 In cases such as this one where a prisoner sues a governmental defendant, 28 U.S.C. § 1915A(a) directs the court to screen the prisoner's complaint to identify both cognizable claims and those claims that should be dismissed.[27] Specifically, section 1915A provides:

doctrine as including both collateral estoppel and claim preclusion, *see Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1370 (Fed.Cir. 2006); *Carson v. Dep't of Energy*, 398 F.3d 1369, 1375 n. 8 (Fed.Cir.2005) (citing *Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. 892).

**27.** Section 1915A(c) defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal

**26.** Collateral estoppel, also known as issue preclusion, "foreclos[es] relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Although the Supreme Court has sometimes treated collateral estoppel as a concept distinct from res judicata, *see id.*, the United States Court of Appeals for the Federal Circuit, the decisions of which are binding on this court, recognizes a broad definition of res judicata, interpreting the

(a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b).

Because plaintiff's factual allegations are nonsensical and because the court lacks jurisdiction over all of plaintiff's claims, the court finds that plaintiff's complaint is frivolous pursuant to section 1915A(b)(1). Thus, plaintiff's complaint is subject to dismissal both for lack of jurisdiction pursuant to RCFC 12(b)(1) and as frivolous pursuant to section 1915A. The court's finding of frivolity constitutes the third such finding with respect to plaintiff. *See Goist*, 2007 WL 3003178, at *1–2; *Goist*, 2007 WL 2902875, at *1. Accordingly, from this time forward, plaintiff shall be prevented, by operation of 28 U.S.C. § 1915(g),[28] from bringing a civil action or appealing a judgment in a civil action or proceeding pursuant to 28 U.S.C. § 1915, *i.e.*, *in forma pauperis*, unless he "is under imminent danger of serious physical injury."

## I. Plaintiff's October 10, 2008 Subpoena Is Invalid and Must Be Quashed

In its motion to quash plaintiff's October 10, 2008 subpoena, defendant identifies the following ways in which the subpoena is invalid: (1) the subpoena was not issued or

signed by the clerk pursuant to RCFC 45(a)(3); (2) the subpoena was not served pursuant to RCFC 45(b)(2); (3) the subpoena requires defense attorney to travel more than 100 miles from his place of residence and employment; (4) the documents requested by plaintiff are irrelevant to his claim in this court, and some of those documents are privileged pursuant to RCFC 45(c)(3)(A)(iii); and (5) compliance with the subpoena would subject defense counsel to an undue burden pursuant to RCFC 45(c)(3)(A)(iv). Mot. Quash 1–2. For all of these reasons, and because the court has dismissed plaintiff's complaint in its entirety, rendering the subpoena moot, the court grants defendant's motion to quash.

## III. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion for summary dismissal. Plaintiff's claims for (1) an accounting pursuant to 28 U.S.C. § 1494 and the Act of March 3, 1863; (2) a "set-off" pursuant to 31 U.S.C. § 3713; (3) conversion, quasi-specific performance, and unjust enrichment; (4) illegal confinement and personal replevin; and (5) breach of implied contract are **DISMISSED** without prejudice for lack of jurisdiction. Moreover, plaintiff's continued abuse of the legal process by filing frivolous and vexatious litigation in this court has earned him his third "strike" pursuant to 28 U.S.C. § 1915(g). Further, the court **GRANTS** defendant's motion to quash plaintiff's October 10, 2008 subpoena.

## COSTS TO DEFENDANT.[29]

The clerk is directed to enter judgment accordingly. Further, the clerk shall mail a copy of this opinion to the following individual:

law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

**28.** Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim

upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
28 U.S.C. § 1915(g).

**29.** The court awards costs to defendant due to both the frivolous nature of plaintiff's complaint and plaintiff's failure to either pay the court's filing fee or request a waiver of the filing fee in an application to proceed *in forma pauperis*.

Gary D. Arbeznik, Assistant U.S. Attorney
Office of the United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113

**IT IS SO ORDERED.**